UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

ARCARDIA MORENO,
Plaintiff,

v. No. 3:15-cv-1194(VAB)

AEROSTAR AIRPORT HOLDINGS, LLC
and PUERTO RICO PORTS AUTHORITY
*doing business as* LUIZ MUNOZ MARIN
INTERNATIONAL AIRPORT,
Defendants.

**RULING ON MOTION TO DISMISS**

Arcadia Moreno has sued Aerostar Airport Holdings, LLC ("Aerostar") and Puerto Rico Ports Authority ("PRPA"), doing business as Luiz Munoz Marin International Airport ("Marin International Airport"). She alleges that the Defendants' negligence allowed a pool of liquid to form on the floor of Marin International Airport, causing her to slip and fall while carrying her newborn child. Compl. ¶¶ 7-9, ECF No. 1-2.

Ms. Moreno initiated her case in Connecticut Superior Court, and Defendants removed the case to this Court. Defendants then filed motions to dismiss for lack of jurisdiction. After moving twice for extensions of time in which to file a response, Ms. Moreno did not oppose the motion. For the reasons that follow, the motion is **GRANTED**.

## I. FACTUAL ALLEGATIONS

Defendant, The Aerostar Airport Holdings, LLC ("Aerostar"), is a limited liability company, organized under the laws of Puerto Rico with a principal office in San Juan, Puerto Rico. Aerostar's Mem. of L. in Supp. of Mot. To Dismiss, ECF no. 16, at 2. Defendant, Puerto Rico Ports Authority ("PRPA"), is a government-owned corporation, organized under the laws of Puerto Rico with its principal place of business in San Juan, Puerto Rico. PRPA's Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 18, at 2. The two defendants have a public-private partnership agreement by which

Aerostar manages the Airport, which it leases from the PRPA. *Id*. at 4. Neither defendant is registered to do business in Connecticut. *Id. See also* Aerostar's Mem. of L. in Supp. of Mot. to Dismiss at 5.

Plaintiff is a citizen of Connecticut, but this suit arises from a visit she made to Puerto Rico. Specifically, she alleges that she was injured while walking in Luis Munoz Marin International Airport ("the Airport") in July 2013. Compl. at ¶6. She alleges that her injury was caused by the negligence and carelessness of the Defendants. *Id*. at 10. Plaintiff alleges that Defendants have regularly conducted or solicited business in the State of Connecticut and should have reasonably expected to be haled into its courts. In separate motions to dismiss for lack of jurisdiction, Defendants allege that they do not solicit or conduct any business within the state. Each defendant has submitted a declaration from a staff member substantiating these allegations. *See* Armada Decl., PRPA's Mem. of L. in Supp. of Mot. To Dismiss Ex. 1, ECF No. 18-1; Ramos Decl., Aerostar's Mem. of L. in Supp. of Mot. To Dismiss Ex. 1, ECF No. 16-1

## II. DISCUSSION

### A. Standard of Review

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations. *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990).

In a diversity action, the amenability of a foreign corporation to suit in federal court is determined in accordance with the law of the state where the court sits, so we apply Connecticut law

to this case. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963). In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 234 Conn. 281, 285-86 (1995). The court will address the question of whether it would offend due process to assert jurisdiction only after determining that jurisdiction is statutorily permissible. *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co*., 190 Conn. 245, 250 (1983).

The trial court must accept all undisputed factual allegations for the purpose of determining personal jurisdiction. *Pitruzello v. Muro*, 70 Conn. App. 309, 314-15 (2002). However, if a plaintiff's factual allegations are disputed, as they are here, the Court cannot "avoid scrutiny of the plaintiff's affidavit to determine whether it [can] provide a sufficient basis for the court to assume … jurisdiction." *Id.* (approving of a trial court's decision not to exercise jurisdiction over a defendant because even though plaintiff's allegations, "standing alone, might have provided a basis for assuming personal jurisdiction," they "were not supported by [the plaintiff's] affidavit and [had] been contradicted by [the defendant's] affidavit."); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."); *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004) ("The court accepts plaintiffs' allegations of jurisdictional facts and will construe all factual inferences in their favor. It need not, however, accept a legally conclusory assertion")(internal citations omitted.); *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 552 (2014) ("A plaintiff, in presenting facts sufficient to establish the court's jurisdiction, must present specific, and not simply conclusory, allegations."); *Standard Tallow Corp. v. Jowdy*, 190 Conn. 48, 54, 459 A.2d 503 (1983)("When a motion to dismiss for lack of personal jurisdiction raises a factual question that cannot be decided on the face of the record, the burden of proof is on the plaintiffs to present evidence which will establish jurisdiction.").

**B. Connecticut's Long Arm Statute**

Connecticut's long arm statute provides that foreign corporations can be sued in Connecticut courts for causes of action "arising out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state." Conn. Gen. Stat. § 33-929(f)(2).

The Connecticut Supreme Court has interpreted Section 33-929 to permit the exercise of personal jurisdiction over a non-resident corporation under both specific and general jurisdiction. Specific jurisdiction is appropriate when the defendant "purposely direct[ed] certain enumerated activities at the forum state, and those activities actually caused the harm complained of." *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc*., 312 F. Supp. 2d 247, 254 (D. Conn. 2004). Otherwise, the statute allows general jurisdiction even when "there is no causal connection between the defendant's forum-directed activities and the plaintiff's lawsuit," as long as the defendant has had "continuous and systematic general business contacts" with the state. *Id.* To exercise general jurisdiction, courts consider "the totality of the defendant's conduct and connection with this state" to determine whether it is "reasonably foreseeable" to the defendant that it would be sued by someone whose business it had solicited in Connecticut. *Thomason*, 234 Conn. at 296. In other words, the Court must review the allegations and evidence about defendant's solicitation of business in the state before asserting either general or specific jurisdiction over the defendant.

Ms. Moreno alleges in her complaint that Defendants "have regularly done or solicited business and/or engaged in any other persistent course of conduct, in the State of Connecticut, and should have reasonably expected that their negligent act against a Connecticut resident would have consequences in the state." Compl. at ¶5.

PRPA disputes these facts in its motions to dismiss, arguing that it "does not solicit or conduct any business" in Connecticut. PRPA's Mem. of L. in Support of Motion to Dismiss at 5. Specifically, PRPA adds that it does not "conduct any direct mailings or marketing in Connecticut

and only has a passive, informational, non-interactive Spanish language website." *Id.* at 3. PRPA has also submitted a declaration of its interim General Counsel in support of its position. Armada Decl. at ¶¶11-12.

Aerostar also disputes Ms. Moreno's allegations. It maintains that it "does not transact any business within the state of Connecticut" or "solicit or conduct any business, or engage in any course of persistent course of conduct, nor has or does … derive any revenues from goods used or consumed or services rendered, in this state." Aerostar's Mem. of L. in Support of Motion to Dismiss at 5. It does not conduct any direct mailings or marketing in Connecticut and has only "a passive, informational, non-interactive, website." *Id.* Aerostar has submitted a declaration of Enrique Ramos, its Security & Risk Director, in support of its position. Ramos Decl. at ¶¶4-11.

Plaintiff has not responded to the motions to dismiss, nor provided additional evidence of either defendant's solicitation of business in Connecticut.

**1. Solicitation of Business in Connecticut**

Neither defendant's solicitation of business in Connecticut is sufficiently targeted towards the State to merit an exercise of specific or general jurisdiction. Before asserting jurisdiction over a foreign corporation, Connecticut courts require allegations that the company took "affirmative measures designed to attract Connecticut customers," or, in other words, proof of "'an organizational network' that is likely to prompt a significant number of Connecticut residents to place business with the [defendant]." *Thomason*, 234 Conn. at *298* (quoting *Frazer v. McGowan*, 198 Conn. 243, 251-52 (1986)). In *Thomason*, the Connecticut Supreme Court reversed the trial court's dismissal of an action for lack of personal jurisdiction over the defendant, holding that general jurisdiction was appropriate when defendant Citibank advertised in national publications that the trustee bank was "'number one for ... New York, New Jersey and Connecticut'" and sent advertisements directly to Connecticut customers with their credit card statements. *Id* at 284-85. Similarly, in *Barrett*, a

federal court found that jurisdiction was statutorily permissible over defendant company because it had organized national advertising campaigns for Walt Disney World, reasoning that "advertising [that] targets Connecticut, albeit as part of a regional or national program, suffices to constitute a commercial solicitation." *Barrett v. Walt Disney Co*., No. 02-1285, 2003 U.S. Dist. LEXIS 19782 (D. Conn. May 1, 2003) at n. 2.

Solicitations that reach very few Connecticut residents are generally insufficient bases for long-arm jurisdiction, particularly when the record reveals little evidence of deliberate targeting of Connecticut's consumers. In *American Wholesalers*, the court denied jurisdiction over a defendant who solicited in trade magazines with a total of approximately 2,000 Connecticut subscribers and on one trade web site. *Am. Wholesalers*, 312 F. Supp. 2d. at 255 (D. Conn. 2004). "Without deliberate targeting, or at least a more substantial subscription base in Connecticut," the court reasoned, "long-arm jurisdiction cannot be proper." *Id.* Similarly, in *Lombard Brothers*, the Supreme Court found that "placement, sporadically, of advertisements in the *New York Times* and the *Wall Street Journal* … cannot constitute repeated solicitation of business" for purposes of the long-arm statute. *Lombard Bros*., 190 Conn. at 257.

Ms. Moreno has not provided non-conclusory evidence of Defendants' solicitation, much less solicitation that is targeted and substantial enough to make jurisdiction statutorily permissible. Each defendant has submitted evidence that calls into question Ms. Moreno's allegations about its solicitation of business in Connecticut.

*a. PRPA's solicitation of business in Connecticut*

PRPA is a government-owned corporation charged with developing, operating, and overseeing all seaports and airports in Puerto Rico, including the Marin International Airport. Armada Decl. at ¶3. By managing, operating, and promoting these ports, Defendant may attract business from Connecticut travelers, but more information is required to show that Defendant solicited business in Connecticut. *See Gardner v. Braniff Int'l*, 312 F. Supp. 844, 845-46 (D. Conn.

1970) (declining to exercise jurisdiction over foreign airline company after holding that advertising tickets in a telephone listing available in Connecticut did "not constitute the transaction or solicitation of business in Connecticut required for the assertion of personal jurisdiction over a non-resident."). In the absence of information suggesting that PRPA took affirmative steps to seek out business in Connecticut, Ms. Moreno cannot justify this Court exercising jurisdiction over PRPA.

*b. Aerostar's Solicitation of Business in Connecticut*

Aerostar is a limited liability company based in Puerto Rico. It manages and operates the Airport, which it leases from PRPA. Ramos Decl. at ¶¶3-5. While Aerostar has an interest in encouraging travelers—including those from Connecticut—to use the airport, there is no suggestion on the record that it maintains an advertising campaign directed at potential travelers, much less one that was sufficiently large or targeted at Connecticut customers to merit jurisdiction. *See Rodriguez-Torres v. Am. Airlines Corp.*, 8 F. Supp. 2d 150, 152 (D.P.R. 1998) ("A defendant's contacts with citizens of the forum are insufficient if they are not based on activities directed to or carried out in the forum. If that were not so, an international airport … would be subject to personal jurisdiction in wherever any passenger going through its gates resided."). As with PRPA, in the absence of such information, Ms. Moreno cannot justify this Court's exercise of jurisdiction over Aerostar.

**2. Defendants' Internet Solicitation**

The record also suggests that each defendant maintains a website. A defendant's internet solicitation by a website available to Connecticut residents can sometimes be substantial enough to justify long-arm jurisdiction, but the Defendants' websites are not sufficient to create jurisdiction in this case. Neither website gives visitors an opportunity to engage with the company, making the exercise of jurisdiction inappropriate.

Personal jurisdiction predicated upon the maintenance of a web site is not proper when the defendant "has only advertised on the Internet, and where another medium such as the telephone or mail is necessary to contact the seller." *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246,

265 (D. Conn. 2001), vacated on other grounds by *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133 (Fed. Cir. 2004). Courts consider advertising-only websites to be "passive," in that they require a potential customer's "activity" in order to interact with the defendant. *Id.*; *see also Am. Wholesalers*, 312 F. Supp. 2d at 255 ("The AWIG web site requires a potential customer to initiate contact with AWIG by telephone, mail, or email, and customers cannot directly purchase any product through the web site. As such, the AWIG site is 'passive,' and therefore personal jurisdiction does not lie on this basis.")

*a. PRPA's Website*

The record reveals evidence of only one website maintained by PRPA.[1] If the website solicits passengers to the Marin International Airport, where the alleged tortious conduct occurred, it does so passively. The website does not allow interested parties to purchase airline tickets or otherwise schedule a visit to the Airport. In several places, it provides phone numbers or links to airline websites so that interested viewers can make travel plans. Customers must take initiative in order to make a transaction with defendant, making the website an insufficient justification for jurisdiction.

b. *Aerostar's Website*

The record reveals evidence of only one website maintained by defendant Aerostar.[2] When compared with PRPA's site, the website is slightly more targeted towards Connecticut-based travelers like Ms. Moreno. It provides information in English about the airport's facilities, customs, passenger services, baggage requirements and the airlines that service the airport. The site is still a "passive" one, however. It does not provide visitors a venue to purchase tickets or schedule other airport services. If customers, like Ms. Moreno, wanted to visit the airport, they would need to take

[1] The Court can take judicial notice of PRPA's website, which PRPA references in its memorandum. *See Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (citations omitted) ("The Court generally has the discretion to take judicial notice of [I]nternet material").

[2] The Court can take judicial notice of Aerostar's website, which Aerostar references in its memorandum. *See above.*

affirmative steps to do so. The website thus does not provide a sufficient basis for this Court's jurisdiction over Aerostar.

## III. Conclusion

The record in this case does not contain enough undisputed facts about either PRPA's or Aerostar's solicitation of business in Connecticut to invoke the state's long-arm statute. In the absence of more extensive and more specific jurisdictional allegations, the plaintiff's complaint does not provide enough evidence of jurisdiction. Because the Court's jurisdiction over both PRPA and Aerostar is statutorily inappropriate, the Court need not reach the question of whether it would be constitutional.

Defendant Aerostar's Motion to Dismiss (ECF No. 15) is GRANTED. Defendant PRPA's Motion to Dismiss (ECF No. 17) also is GRANTED.

SO ORDERED at Bridgeport, Connecticut this 30th day of September, 2016.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE